IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| VAN C. SHER and CAROL L. SHER on behalf of themselves and their minor son, A.L.S., | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : | No. 11-1525 |
| UPPER MORELAND TOWNSHIP SCHOOL DISTRICT, et al., | : : : : | |
| Defendants. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                  **DECEMBER 28, 2012**

      The case before the Court on remand from the Court of Appeals for the Third Circuit ("Third Circuit") involves a former student of the Upper Moreland Township School District, who is diagnosed with Attention-Deficit Hyperactivity Disorder ("ADHD"),[1] and the issue of whether he was discriminated against because of his ADHD.

**I.**     **BACKGROUND**

      Plaintiffs, Van C. Sher and Carol L. Sher (collectively, "Plaintiffs"), currently proceeding pro se, are the grandparents and legal guardians of A.L.S. A.L.S. was enrolled within Defendant, Upper Moreland Township School District ("District" or "UMSD"), in the eighth grade and has since graduated.[2] While a student, Plaintiffs allege that the District, Superintendent of UMSD

---

[1] ADHD is a chronic condition that includes a combination of problems such as difficulty sustaining attention, hyperactivity, and impulsive behavior. http://www.mayoclinic.com/health/adhd/DS00275 (last visited Dec. 17, 2012).

[2] A.L.S. turned eighteen in April 2012. Transcript of Status Conf. at 6-7. A.L.S.'s claims were dismissed without prejudice from this action on August 19, 2011. (Doc. No. 11.) He is now eighteen and, as an adult under Pennsylvania law, can decide whether he wants to pursue his own action. See 20 Pa.C.S.A. § 102 (pursuant to

Dr. Robert Milrod, and UMSD Psychologist Howard Cohen (collectively, "Defendants") failed to accommodate A.L.S.'s ADHD and singled him out for disciplinary sanctions, including detentions, verbal warnings, and in-school and out-of-school suspensions.[3] (Compl.¶¶ 21-35.)

Liberally construing the Complaint, this lawsuit alleges, among other claims, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. §§ 1401 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 794.[4] (See Compl.) Some of the claims allege that the District failed to provide A.L.S. a Free Appropriate Public Education ("FAPE"), as required by the IDEA and Section 504 of the Rehabilitation Act. (Id.) Plaintiffs sought compensatory education, reimbursement for educational expenses, and compensatory damages for future psychological care of A.L.S. (Id.)

---

Pennsylvania law, an individual over the age of eighteen is considered an adult and can sue or be subject to suit). Any claims by A.L.S. started to accrue for statute of limitations purposes when he turned eighteen. See Harris-Thomas v. Christina Sch. Dist., 145 Fed. App'x 714, 715 (3d Cir. 2005) (citing Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882-83 (3d Cir. 1991)). Due to the dismissal of A.L.S., this action is only proceeding with Van C. and Carol Sher as the sole plaintiffs. Notably, the Court of Appeals for the Third Circuit ("Third Circuit") also stated that Plaintiffs' appeal only proceeded as to the grandparents because "the Shers are non-lawyers proceeding pro se [and] are not permitted to represent their grandson's interests in federal court." Sher v. Upper Moreland Twp. Sch. Dist., 481 Fed. App'x 762, 763 n.1 (3d Cir. 2012) (citing Osei-Afriyie, 937 F.2d at 882).

[3] This case has a complicated history that has been fully set forth in my prior Memorandum Opinion dated August 19, 2011. See Sher v. Upper Moreland Twp. Sch. Dist., No. 11-1525, 2011 WL 3652474, at *1-5 (E.D. Pa. Aug. 19, 2011).

[4] Section 504 is codified at 29 U.S.C. § 701 et seq. It provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Section 504 applies to public schools that receive Federal financial assistance and its implementing regulations in this context are codified at 34 C.F.R. § 104 et seq.

29 U.S.C. § 794(a). Section 504's implementing regulations provide a detailed scheme for fashioning a FAPE for students with qualifying disabilities. See 34 C.F.R. § 104.35.

2

By Memorandum Opinion dated August 19, 2011, we granted the Defendants' Motion to Dismiss in its entirety. See Sher, 2011 WL 3652474, at *1-14. Additionally, we denied Plaintiffs' Motion for Appointment of Counsel. Id. at *14. Plaintiffs filed a timely appeal. On appeal, the Third Circuit vacated this Court's ruling dismissing Plaintiffs' Section 504 Rehabilitation Act claim holding that further proceedings were required. Sher, 481 Fed. App'x at 764-65. Notably, the Third Circuit pointed out that "[i]n their brief, the Shers contest the District Court's decision only insofar as it dismissed their § 504 claims against the District." Id. at 763 n.2. Accordingly, the Third Circuit held that "they have waived any other arguments that the District Court erred in dismissing their complaint." Id. (citing Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994)). Consequently, the only claim that is at issue is Plaintiffs' Section 504 Rehabilitation Act claim against the District.[5]

Regarding Plaintiff's Section 504 claim, the Third Circuit vacated our Order dismissing the claim and remanded the case instructing us to consider whether Plaintiffs, as A.L.S.'s guardians, have standing to assert a discrimination claim in their own right under Section 504 of the Rehabilitation Act. Sher, 481 Fed. App'x at 764-65. We find that they do not. Therefore, Plaintiffs' Section 504 Rehabilitation Act claim, their only remaining claim, will be dismissed

---

[5]In addition, the Third Circuit instructed us to revisit Plaintiffs' request for appointment of counsel. Sher, 481 Fed. App'x at 764. For over a period of three months, we have earnestly been attempting to find Plaintiffs voluntary representation to no avail. Thus, at this time, Plaintiffs are proceeding pro se and we have construed Plaintiffs' papers liberally. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). During an in-court status conference, the issue of representation for Plaintiffs was discussed at which time Van C. Sher told the Court that he wanted to represent himself and his wife, and he wanted an attorney to represent A.L.S., who, the Court notes, is dismissed without prejudice from this action. Transcript of Status Conference at 4. He also admitted that he had the funds to pay for an attorney, and is capable of representing himself after being in the court system for 25 years as a real estate expert. Id. at 13.

for lack of standing.⁶

## II. DISCUSSION

"Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Grp. of N.J. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997) (citation omitted). Federal courts are under an independent obligation to examine their own jurisdiction, and "standing is perhaps the most important of the jurisdictional doctrines." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990) (stating that the issue of standing may be raised by the court sua sponte at any stage of the proceedings). Since Plaintiffs' only remaining claim is under Section 504, the question is whether Plaintiffs may prosecute claims on their own behalf under only Section 504 of the Rehabilitation Act. We find that they cannot.

"Section 504 of the Rehabilitation Act prohibits recipients of federal funds, including schools, from discriminating on the basis of disabilities." Chambers v. Phila. Sch. Dist., 827 F. Supp. 2d 409, 416 (E.D. Pa. 2011) (citing 29 U.S.C. §794(a)). "Section 504 is similar to the IDEA [Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401 et seq.] in that it provides a mechanism to redress the failure on the part of a state receiving federal funds to provide a free appropriate public education [FAPE] to children with disabilities. Annika T. v. Unionville Chadds-Ford Sch. Dist., No. 08-4944, 2009 WL 778350, at *3 (E.D. Pa. Mar. 24, 2009). The IDEA imposes an affirmative duty on states which accept certain federal funds to provide all

---

⁶The Third Circuit also said that we should consider what effect, if any, does A.L.S.'s apparent withdrawal from UMSD have on his right and the Shers' right to pursue a FAPE violation under Section 504. Sher, 481 Fed. App'x at 765. Since we find that Plaintiffs' lack standing to bring their claim under Section 504 of the Rehabilitation Act, and in light of the fact that A.L.S. in not a party, we will not consider the effect of A.L.S.'s apparent withdrawal from UMSD. Also, as previously noted, A.L.S. has graduated from UMSD. Transcript of Status Conf. at 13-14.

4

disabled children FAPE, while Section 504 imposes a negative prohibition against disability discrimination in programs that are federally-funded.  Id. (citing Neena S. v. The Sch. Dist. of Phila., No. 05-5404, 2008 WL 5273546, at *6 (E.D. Pa. Dec. 19, 2008)).

An instructive case on the issue of whether Plaintiffs have standing to bring a claim on their own behalf under Section 504 of the Rehabilitation Act is Winkleman v. Parma City Sch. Dist., 550 U.S. 516 (2007).  In Winkleman, the parents of an autistic child filed suit against the child's school district for violations of the IDEA.  550 U.S. at 519-20.  The district court granted judgment on the pleadings finding the child was given a FAPE.  Id. at 521.  The United States Court of Appeals for the Sixth Circuit dismissed the appeal based upon the premise that the parents, who were proceeding pro se, could not prosecute their child's IDEA claim.  Id.  The United States Supreme Court ("Supreme Court") reversed and remanded the Sixth Circuit's ruling holding that parents can assert their own claims under the IDEA with regards to the denial of a FAPE for their child.[7]  Id. at 521, 533-35.

The Supreme Court held that parents have "independent, enforceable rights concerning the education of their children" under the IDEA.  Id. at 529.  In so holding, the Court relied upon the text of IDEA which has many references to "the rights of children with disabilities and parents of such children."  Id. at 523 (citing 20 U.S.C. § 1400(d)(1)(B)).  The Court held that parents have standing in federal court "to prosecute IDEA claims on their own behalf" based

---

[7] It is important to note the distinction between parents appearing pro se to prosecute their own claims and parents acting as legal counsel for their children.  See Woodruff v. Hamilton Twp. Sch. Dist., No. 06-3815, 2007 WL 4556968, at *4 (D.N.J. Dec. 20, 2007).  "Although the Supreme Court did acknowledge the importance of parents' involvement in their child's education, the Court did not hold that parents can represent their child in court."  Id.  Notably, "[t]he Court explicitly did not make that determination, and, instead, held that because parents 'have a legally cognizable interest in the education of one's child,' they are able to prosecute their *own* claims with regard to their child's education."  Id. (quoting Winkleman, 550 U.S. at 535).

5

upon both procedural violations of the IDEA and the substantive denial of a "free appropriate public education" to their children. Id. at 533-535. The Winkleman decision clearly confers independent parental standing under the IDEA on their own behalf. However, the more complicated issue before us is whether parents may bring a claim on their own behalf solely under Section 504 of the Rehabilitation Act.

Since Winkleman, there has been a split among federal courts disagreeing about whether the Supreme Court's decision conferring independent parental standing under the IDEA equally extends to parental claims on their own behalf under Section 504 of the Rehabilitation Act. Courts extending the Winkleman decision to Section 504 rely upon the parallel statutory rights in both the IDEA and Section 504 of "any party aggrieved" to seek appropriate relief in the federal court. See C.J.G. v. Scranton Sch. Dist., No. 07-1314, 2007 WL 4269816, at *5 (M.D. Pa. Dec. 3, 2007) (noting the similar language used in the Rehabilitation Act permitting recovery for "a party aggrieved" finding that "any party aggrieved" should be construed to the fullest extent permitted); Tereance D. ex rel. Wanda D v. Sch. Dist. of Phila., 548 F. Supp. 2d 162, 170 (E.D. Pa. 2008).

Other courts concluding that independent parental standing under the IDEA extends equally to claims by parents on their own behalf under Section 504 focus on the emphasis in Winkleman on the broader principle regarding the "importance of parents in the educational role of their children" noting that "a parent of a child with a disability has a particular and personal interest" in preventing discrimination against the child. See Winkelman, 50 U.S. at 529; see also Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007) ("'[A] parent of a child with a disability has a particular and personal interest' in preventing discrimination against the child."

6

(quoting Winkleman, 550 U.S. at 529)); A.M. ex rel. J.M. v. NYC Dept. of Educ., 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012) ("This extension requires no real stretch: the Winkleman Court itself stressed that parental standing was not only consistent with the purpose of IDEA, but also, 'fully in accord with our social and legal traditions.'" (quoting Winkleman, 550 U.S. at 535)); B.D. S. v. Southold Union Free Sch. Dist., Nos. 08-1319, 08-1864, 2009 WL 1875942, at *15 (E.D.N.Y. June 24, 2009) (stating that the "plaintiff may assert discrimination and retaliation claims under the Rehabilitation Act and [the Americans with Disabilities Act], since 'a parent of a child with a disability has a particular and personal interest' in preventing discrimination against that child").

On the other hand, courts limiting the Winkleman decision solely to the IDEA have primarily relied upon the Supreme Court's close examination and reliance upon the text and structure of the IDEA. See Link ex rel. Link v. Metro. Gov't of Nashville and Davidson County, No. 12-0472, 2012 WL 4506028, at *5 (M.D. Tenn. Sept. 28, 2012) (declining to extend Winkleman to the Rehabilitation Act stating that the Supreme Court found that the text and structure of the IDEA specifically granted parents independent and enforceable rights vesting in them a central role in the statutory scheme, and that it recognized that parents possess a legal interest in their child's education, but did so in the context of the analysis of the IDEA's statutory scheme); Hooker v. Dallas Indep. Sch. Dist., No. 09-676, 2010 WL 4025776, at *6 (N.D. Tex. Sept. 13, 2010) ("This court declines to so extend the Winkleman decision because it is too closely tied to the text and structure of the IDEA to apply equally to the ADA and the Rehabilitation Act."), *adopted*, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010); D.A. v. Pleasantville Sch. Dist., No. 07-4341, 2009 WL 972605, at *8 (D.N.J. Apr. 6, 2009) (declining to

extend Winkleman into the context of the Rehabilitation Act stating that "the [Supreme] Court did not base its decision on the IDEA's 'aggrieved party' language, but, rather, its holding arose from an examination of the overall structure and content of the IDEA").

It is appropriate to look to the statutory language and "textual evidence of a statutory scheme" to interpret the breadth of standing conferred by Congress in a particular statute. See Bennett v. Spear, 520 U.S. 154, 166 (1997). In making its decision, the Winkleman Court did not only base its decision on the "aggrieved party" language of the IDEA, but also relied upon the text of IDEA, as well as "consideration of the entire statutory scheme." Winkleman, 550 U.S. at 523. In so doing, the Court held that "the text of IDEA resolves the question presented. We recognize, in addition, that a proper interpretation of the Act requires a consideration of the entire statutory scheme." Id. Reasoning that the IDEA's text and structure does not differentiate between the rights granted to children and parents, the Winkleman Court stated that the IDEA provides for "expansive review and extensive parental involvement" at all levels, including the federal courts. Id. at 525-26; see J.R. ex rel. W.R. v. Sylvan Union Sch. Dist., No. 06-2136, 2008 WL 682595, at *1 (E.D. Cal. Mar. 10, 2008) ("Only where the rights of the child and parents are coterminous can the parents pursue, on their own behalf, the claims they share with the child."), *adopted*, 2008 WL 3437535 (E.D. Cal. June 5, 2008). "Although the Rehabilitation Act also permits recovery for "'any party aggrieved,' it does not involve a statutory scheme that contemplates coterminous rights." L.F. v. Houston Indep. Sch. Dist., No. 08–2415, 2009 WL 3073926, at *22 (S.D. Tex. Sept. 21, 2009), *affirmed*, 2012 WL 171627 (5th Cir. Jan. 23, 2012); see also Hooker, 2010 WL 4025776, at *6 ("Since the ADA and the Rehabilitation Act do not involve a statutory scheme that contemplates coterminous rights, the Court finds that Plaintiffs

8

do not have standing to pursue the ADA and the Rehabilitation Act claims based on allegations of discrimination against E.H.")

Another district court within the Third Circuit, Woodruff v. Hamilton Township School Dist., narrowly construed Winkleman concluding that the decision was made in the context of the IDEA, and did not extend to parental claims solely based upon other Acts, including the Rehabilitation Act, or other laws. 2007 WL 4556968, at *4. The Woodruff Court noted that "the Winkleman decision was made in the context of the IDEA, and turned 'upon the significance of IDEA's interlocking statutory provisions.'" Id. (quoting Winkleman, at 522). The Woodruff Court went onto state that the Woodruffs did not bring any claim under the IDEA, instead asserting claims under the Rehabilitation Act, the ADA, New Jersey's Law Against Discrimination ["NJLAD"], due process violations, and emotional distress. Id. As such, the court concluded that "construing the Court's [Winkleman] opinion narrowly, the Winkleman case is inapplicable here because the Woodruffs have not brought claims under the IDEA." Id.; see also A.G. v. Lower Merion Sch. Dist., No. 11-5025, 2011 WL 6412144, at *4 (E.D. Pa. Dec. 20, 2011) (stating that "[w]e have since read Winkelman to apply to claims under the ADA and § 504, but only where there were also claims under the IDEA and the claims under the ADA and § 504 were closely intertwined with them" concluding that Winkleman is inapplicable to parents' claims only under the Rehabilitation Act and the ADA, unrelated to the IDEA, because "[t]hose statutes do not contain any references to the rights of parents, much less any independent, enforceable rights of parents"); see also Annika, 2009 WL 778350, at * 4 ("Now that Winkelman has held that parents have standing under the IDEA to enforce their independent right to a free appropriate education for their child, it would be incongruous to deny them standing under § 504

9

where their claims under that statute are premised on alleged violations of the IDEA.")

The Woodruff decision is worthy of note because the Third Circuit reviewed the District Court's decision in an unpublished opinion ruling on an appeal regarding a subsequent issue concerning the dismissal of the parents' amended complaint. Woodruff v. Hamilton Twp. Pub. Sch., No. 08-2439, 305 Fed. App'x 833 (3d Cir. 2009). While not directly addressing the issue of whether parents have standing to bring a suit on their own behalf under Section 504 of the Rehabilitation Act, the Third Circuit did state that "Winkleman is limited to the IDEA context and does not permit [the parents of a minor child] to litigate the NJLAD, procedural due process, or common law counts alleged in their Amended Complaint." Id. at 836; see also D.A. v. Pleasantville Sch. Dist., 2009 WL 972605, at *8 (interpreting Winkleman as too closely tied to the specific language of the IDEA to apply equally to the Rehabilitation Act and citing the Woodruff cases stating that the Third Circuit affirmed the District Court's narrow reading of Winkleman).

Based upon the Winkleman decision, the relevant case law including the Third Circuit's Woodruff opinion, as well as examination of the text and structures of the IDEA and the Rehabilitation Act, we decline to extend Winkleman into the context of an action based solely upon Section 504 of the Rehabilitation Act. Given the fact that examination of statutory language and statutory schemes are used to interpret the breadth of standing conferred by Congress in a particular statute, we agree with the decisions narrowly construing Winkleman to cases based upon the IDEA due to the Supreme Court's focus on its text and structure. Even though the Rehabilitation Act affords similar protections as the IDEA, we interpret Winkleman as too closely tied to the text and structure of the IDEA to apply with equal force to an action

10

based solely on Section 504 of the Rehabilitation Act since it, unlike the IDEA, does not give parents coterminous rights with the rights of their child.  In light of all of the above, especially since there is no IDEA claim here, we decline to extend Winkleman into the context of a Rehabilitation Act claim.  Based upon the forgoing reasoning, Plaintiffs do not have standing to pursue their Section 504 Rehabilitation Act claim against the District.  Thus, Plaintiffs' claim under the Rehabilitation Act is dismissed.

An appropriate Order follows.